IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRIAN NETWIG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 02-2143-CM** |
| **GEORGIA-PACIFIC CORPORATION** ) | |
| **and WILLAMETTE INDUSTRIES, INC.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on defendant Georgia-Pacific Corporation's Motion to Exclude Plaintiff's Expert Testimony of Roger Peugeot (Doc. 110) and Defendant's Second Motion to Exclude Plaintiff's Expert's Opinion of Rubin Shmulsky (Doc. 116).

**I.  Background**

Plaintiff brought a products liability claim against defendant for injuries suffered when a piece of copper pipe plaintiff was bracing popped out from an engineered floor joist manufactured by defendant and hit plaintiff's eye. Plaintiff has proffered testimony from Roger Peugeot regarding the reasonableness and foreseeability of plaintiff's method of bracing copper pipe. Plaintiff has proffered testimony from Rubin Shmulsky regarding the likelihood of such pipe becoming dislodged from engineered floor joists compared to sawn lumber floor joists. Defendant has moved to exclude Mr. Peugeot's and Mr. Shmulsky's testimony on the grounds that their testimony does not meet the requirements for admission of expert testimony set

forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharamaceuticals, Inc.*, 509 U.S. 579 (1993).

**II.    Standard**

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Under this rule, the court examines whether the expert is initially qualified to give the opinion proposed and whether the opinion expressed meets the requirements of *Daubert* in that it "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 591. This evaluation, commonly referred to as the court's "gate-keeping" function, extends not only to scientific testimony, but also to technical and other specialized testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

To determine reliability, the court may use the flexible *Daubert* test, which includes the following factors: "(1) whether the proffered technique can and has been tested; (2) whether the technique or theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a technique in the relevant community." The court may also consider other relevant factors, including an expert's qualifications, in determining reliability. *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003) (citing *Kumho*, 526 U.S. at 149).

To determine relevancy, the court considers whether the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The court should admit testimony that is "[so] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. In general, "rejection of expert testimony . . . [is] the exception rather than the rule." *Hutton Contr. Co., Inc. v. City of Coffeyville*, 2004 WL 2203449, *11 (D. Kan. Sept. 24, 2004).

**III.   Analysis**

    **A.   Proffered Expert Testimony of Roger Peugeot**

Defendant alleges that Mr. Peugeot's proffered expert testimony is (1) unreliable because it is not scientific and (2) irrelevant because it would not aid the jury in determining the reasonableness of plaintiff's actions in the context of a products liability case.

First, defendant contends that the court must exclude Mr. Peugeot's proffered expert testimony because it is not based on scientific methods. However, the court need not evaluate the reliability of nonscientific expert testimony based solely on the four *Daubert* factors. *Kumho Tire Co.*, 526 U.S. at 148. Instead, the court may evaluate reliability based on the expert's "knowledge and experience [in] his discipline." *Id.*

Mr. Peugeot opines that plaintiff's actions were common practice in the plumbing industry and therefore were reasonable. If the court finds that Mr. Peugeot's testimony, based on his knowledge and experience, is reliable, the court may admit the testimony. In *Worthington v. Wal-Mart Stores, Inc.*, the defendant hired a professional welder to testify regarding welding, welding practices and procedures, and welding safety. 257 F. Supp. 2d 1339, 1342 (D. Kan. 2003). The court in that case found the expert's

testimony to be reliable based on his extensive experience in the welding industry, his teaching of welding classes, and his consultation of welding publications in reaching his conclusions. *Id.* at 1343.

In this case, Mr. Peugeot has 52 years of plumbing experience, is licensed as a Master Plumber, is active in the National Association of Plumbing, Heating, and Cooling Contractors, and has published a book and articles in a trade publication. Based on plaintiff's expert disclosure and the issues on which plaintiff has proffered Mr. Peugeot's testimony, the court finds that Mr. Peugeot's testimony is limited to practices of which he has personal knowledge. He has been trained to brace pipe in the manner the plaintiff used and is also familiar with the type of I-joist plaintiff was using when he was injured. Based on Mr. Peugeot's level of knowledge and experience in the plumbing industry and the nature of his testimony, the court finds Mr. Peugeot's testimony to be reliable under Rule 702.

Second, defendant argues that the court must exclude Mr. Peugeot's testimony as irrelevant in that it would not aid the jury in determining the reasonableness of plaintiff's method of installing pipe. The court must consider whether Mr. Peugeot's testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. Here, it is not likely that the information proffered by Mr. Peugeot is within the knowledge of a layman. The court finds that Mr. Peugeot's testimony regarding common practices in the plumbing industry would be useful to the trier of fact in understanding the evidence and determining the reasonableness and foreseeability of plaintiff's method of installing pipe. Thus, the court finds Mr. Peugeot's testimony to be both reliable and relevant and therefore admissible under Rule 702.

**B.     Proffered Expert Opinion of Rubin Shmulsky**

-4-

Defendant alleges that Mr. Shmulsky's testimony is (1) unreliable because it is not based on scientific examination of the I-joists in question, and (2) irrelevant because it will not assist the jury in determining whether defendant negligently manufactured its product.

First, defendant argues that Mr. Shmulsky's testimony is unreliable because Mr. Shmulsky never tested the actual engineered floor joists used in the house in which plaintiff was working when he was injured. Defendant contends that the component piece of similar I-joist Mr. Shmulsky tested in his laboratory could have differed from the I-joist used in the house in question. Defendant further argues that Mr. Shmulsky's opinions are unreliable because they are not based on accepted scientific methodology, his theory has not been subject to peer review, the potential rate of error with regard to his opinion is unknown, and there is no evidence to suggest that his opinion is generally accepted in the relevant professional community.

While defendant focuses on the *Daubert* factors in its arguments, the court also considers other relevant factors in determining the reliability of Mr. Shmulsky's testimony. *See Kumho Tire Co.*, 526 U.S. at 151 (holding that the *Daubert* factors are not a definitive checklist or test and that courts may consider, among other factors, an expert's knowledge and experience in his discipline). The court notes that Mr. Shmulsky has a doctorate in Forest Products, has extensive experience analyzing wood products, has taught several courses related to forest products, and has published numerous articles on forest products and wood technology. Thus, the court finds that Mr. Shmulsky is qualified to render an opinion on the differences between engineered floor joists and sawn wood joists.

Despite Mr. Shmulsky's qualifications, the court must still consider the reliability of his methods in reaching his conclusion that it was more likely for the piece of copper pipe in question to have popped out

-5-

from between two engineered floor joists as opposed to two sawn wood joists. The court finds it significant that Mr. Shmulsky did not test the engineered floor joists actually used in the house where plaintiff was injured. Without testing the actual engineered floor joists, Mr. Shmulsky cannot reliably conclude that it was the quality of the engineered floor joists used in the house that caused the copper pipe to pop out and hit plaintiff in the eye.

However, there are aspects of Mr. Shmulsky's testimony that are reliable and relevant. Mr. Shmulsky analyzed the differences between samples of oriented strandboard ("OSB"), the type of engineered wood product used in nearly all I-joist web stock, and sawn lumber, and reached various conclusions about the effects of the differences between the two types of wood (Shmulsky Aff. Ex. B.) Mr. Shmulsky consulted several publications in preparing his report, and this fact, coupled with his education, research, and experience in the field, indicate that his conclusions regarding the average differences in density, surface hardness, grain angle, and stiffness between OSB web-stock and various types of sawn lumber are reliable. Thus, the court concludes that Mr. Shmulsky's testimony regarding general differences between typical OSB web-stock and sawn lumber is reliable.

Defendant also argues that Mr. Shmulsky's testimony is irrelevant in that it would not assist the jury in determining whether the engineered floor joists in question were negligently manufactured or whether plaintiff's method of bracing pipe was unreasonable or unforeseeable. The court rejects this argument. Mr. Shmulsky's testimony contains information not within the knowledge of a layman. Mr. Shmulsky's testimony is relevant to the extent that it evaluates the differences between engineered floor joists and sawn wood floor joists. Information about such differences may assist the jury in determining whether the copper pipe in question would have been more likely to pop out from engineered, as opposed to sawn lumber,

floor joists. While Mr. Shmulsky's testimony does not specifically analyze the floor joists used in the house in question, it could provide a jury with information not typically known to a layman and necessary to make such a factual determination in the case.

Accordingly, the court finds that aspects of Mr. Shmulsky's testimony are reliable and relevant and therefore admissible. The court will permit Mr. Shmulsky to testify regarding differences between engineered floor joists and sawn lumber floor joists, but Mr. Shmulsky is prohibited from stating any conclusions regarding the specific floor joists used in the house in which plaintiff was injured.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Plaintiff's Expert Testimony of Roger Peugeot (Doc. 110) is denied.

**IT IS FURTHER ORDERED** that Defendant's Second Motion to Exclude Plaintiff's Expert's Opinion of Rubin Shmulsky (Doc. 116) is granted in part and denied in part as is set forth above.

Dated this 26th day of July 2005, at Kansas City, Kansas.

s/ Carlos Murguia  
CARLOS MURGUIA  
United States District Judge