## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRIAN NETWIG,** )<br>)<br>**Plaintiff,** )<br>) | **CIVIL ACTION** |
| v. )<br>) | **No. 02-2143-CM** |
| )<br>**GEORGIA PACIFIC CORPORATION and** )<br>**WILLAMETTE INDUSTRIES, INC.,** )<br>)<br>**Defendants.** )<br>) | |

### MEMORANDUM AND ORDER

This matter comes before the court on defendant Georgia-Pacific Corporation's ("Georgia-Pacific") Second Motion for Summary Judgment (Doc. 123).

**I.     Facts**

Plaintiff claims that he was injured on January 21, 1999 while he was installing plumbing in a structure in Olathe, Kansas. Plaintiff claims that his injury occurred when, as he was inspecting his work, one of the braces plaintiff had installed "shot out" from between the joists of the structure and flew directly into plaintiff's eye, which caused loss of the eye. Plaintiff claims that the engineered I-beam joists ("the product") that plaintiff was installing pipe under were harder, more elastic, and more difficult to penetrate than sawn lumber joists, preventing the copper pipe plaintiff had installed from wedging itself between the joists. Plaintiff thus claims that the product is defective and that both the manufacturer and the distributor of the product failed to warn him of the alleged defect. Plaintiff resided in Kansas and was working for a

Kansas employer at the time of the injury which gave rise to his claims.  Plaintiff received medical treatment for his injury in Kansas.

Plaintiff has brought product liability claims for negligence, strict liability in tort, and breach of express or implied warranty against the manufacturer of the product, defendant Willamette Industries, Inc. ("Willamette"), an Oregon corporation.  Willamette has insurance coverage of $1,000,000 per occurrence.  Plaintiff has brought the same claims against Georgia-Pacific, a Georgia corporation and a distributor of the product.  Plaintiff claims approximately $313,450 in medical expenses, future medical expenses, lost wages and future lost earnings, in addition to his claim for punitive damages.[1]

Georgia-Pacific purchased the product from Willamette and resold it to buyers.  None of the product was retained by Georgia-Pacific.  Willamette provided all of the instructions, marketing, and other written information for the product.  Georgia-Pacific did not conduct any testing of the product but did require Willamette to provide quality-control reports.

Plaintiff testified that he did not have knowledge of the differing characteristics of the product, as compared with regular sawn lumber, and that he had not read any literature from the defendants warning of danger associated with wedging of copper pipe between the floor joists.  Plaintiff has proffered expert testimony that the process used by plaintiff to wedge a copper pipe between the floor joists to support plumbing lines is a well-known and accepted practice in the plumbing industry, and that the process used by the plaintiff to wedge the copper pipe between the floor joists was foreseeable.  However, one of plaintiff's experts, Rubin Shmulsky, testified that the product is not defective in any way, and has performed exactly as

---

[1] In the pretrial order entered in this case, plaintiff stated total claimed damages of $1,250,000.

designed. Plaintiff has not identified any witness to testify as to the reasonableness of the manufacturer's or distributor's conduct as it relates to the product. Plaintiff also has not identified any witness to testify that the product is not fit for the ordinary purpose for which it was intended.

Plaintiff originally filed his claims against defendants in this court on January 17, 2001. Plaintiff voluntarily dismissed his first lawsuit after both defendants filed motions to dismiss claiming that the case was barred by the Kansas commencement statute. Plaintiff filed this current action in the United States District Court for the District of Minnesota, asserting diversity jurisdiction on July 11, 2001. Personal and original jurisdiction was proper in the State of Minnesota. Upon defendants' motions, the Minnesota District Court transferred this case back to the District of Kansas pursuant to 28 U.S.C. § 1404(a) in March 2002.

In its summary judgment motion, Georgia-Pacific claims that: (1) it is immune, pursuant to Kan. Stat. Ann. § 60-3306 of the Kansas Products Liability Act ("KPLA"), from plaintiff's product liability claims arising from alleged defects in the product; (2) the product is not defective, and that plaintiff's expert has testified that the product is not defective; (3) plaintiff's negligence claim fails as a matter of law because plaintiff cannot provide evidence that Georgia-Pacific acted unreasonably; and (4) plaintiff's breach of warranty claims fail as a matter of law because plaintiff cannot provide any evidence that the project was unmerchantable or unfit for the ordinary purpose for which it was intended.

Plaintiff contends that he originally brought his claims in the state of Minnesota under state common law principles of products liability through negligence and strict liability for failure to warn, and not pursuant to the KPLA. Plaintiff contends that the court must first determine whether Kansas or Minnesota law applies. Essentially, Minnesota, where plaintiff initiated his claims, has not adopted the Uniform Products Liability Act, on which the KPLA is based. Thus, it is more advantageous to plaintiff to litigate his claims

under Minnesota substantive law rather than Kansas substantive law. Plaintiff contends that Minnesota substantive law should apply to his claims and, thus, the KPLA is inapplicable to his claims.

Georgia-Pacific contends that the District of Minnesota found that Kansas substantive law should apply to the case at the time it transferred the case to this district. Georgia-Pacific further argues that 28 U.S.C. § 1404(a) requires the court to apply the law that the District of Minnesota would have applied pursuant to Minnesota's choice of law rules. Applying such choice of law rules, Georgia-Pacific contends that Kansas substantive law applies to plaintiff's claims. Georgia-Pacific further argues that Kansas law should be applied because the accident occurred in Kansas.

Willamette filed a reply brief in support of Georgia-Pacific's position that Kansas substantive law should apply to this case, pursuant to Minnesota's choice of law rules.

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.    Analysis**

In light of the parties' opposing positions on whether Kansas or Minnesota substantive law applies to plaintiff's claims, the court first addresses the choice of law issue before reaching the substantive issues in Georgia-Pacific's summary judgment motion.

    **A.     Choice of Law**

"Generally, when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court. When the transferor court lacks personal jurisdiction, however, the choice of law rules of the transferee court apply." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001) (internal citations omitted). Because the personal jurisdiction of the Minnesota District Court over the parties was not an issue in the transfer pursuant to U.S.C. § 1404(a), and the personal jurisdiction of this court over the parties is not disputed, this court applies Minnesota's choice of law rules in determining whether Minnesota or Kansas substantive law applies to plaintiff's claims.

"Minnesota courts have adopted the significant contacts tests for determining which state's law should apply. The test examines the following five factors: (1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interest; and (5) Application of the better rule of law." *Jacobson v. Universal Underwriters Ins. Group*, 645 N. W. 2d 741, 745 (Minn. App. 2002).

Before analyzing the relevant choice of law factors, this court finds it important to note that, although the Minnesota District Court declined to make a ruling whether Minnesota or Kansas substantive law would apply to plaintiff's claims because the issue was not before it, the Minnesota court was clear that it considered plaintiff's case a "flagrant example of forum shopping upon an unexplained failure to comply with Kansas commencement law," that it was "beyond the Court . . . why a case obviously belonging in the District of Kansas should have taken the circuitous route through Minnesota to get there," and that Kansas substantive law should apply to plaintiff's claims. *See* District of Minnesota March 11, 2002 Memorandum Opinion and Order.

The Minnesota District Court, in analyzing whether transfer of the case to Kansas was proper, also noted:

> None of the parties are located here in Minnesota. To the extent that Defendants are represented in Minnesota by a registered agent or a satellite facility, to say that their presence in Minnesota is minimal with respect to the facts of this case is an understatement. While neither Defendant is located in Kansas as well, the Plaintiff is a resident of Kansas and acknowledged the obvious convenience of that forum by first filing his action there.

*Id*.

The Minnesota District Court further held that:

> There is no dispute that, given the location of Plaintiff's action, Kansas substantive law shall apply. While a Minnesota court is certainly capable of fairly and aptly applying the law of another jurisdiction, a Kansas court is undoubtedly more familiar with the relevant law and its proper application. More importantly, however, there is no indication that Minnesota has any interest to protect or serve by maintaining this case in one of its courts. To the contrary, Kansas has an obvious interest in protecting the rights of its citizenry and resolving local controversies in its own courts.

*Id*. It is within that framework that the court turns to Minnesota's choice of law factors.

### 1. Predictability of Results

"This factor represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping. Courts place more emphasis on this factor in contract cases . . . ." *Id*. (citing *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W. 2d 91, 94 (Minn. 2000). Because this case involves tort claims, this factor is less relevant to the court's determination, and, as both plaintiff and Georgia-Pacific point out, the parties did not have predetermined expectations regarding the choice of law issue.

However, Georgia-Pacific contends, and the court agrees, that plaintiff, as a Kansas resident, employed in Kansas and working in Kansas at the time of the accident, should reasonably have expected

-6-

that Kansas law would apply if he was injured at work. This court is also mindful of the Minnesota District Court's observation that plaintiff's filing of his claims in Minnesota was a procedural method to avoid the bar of his claims pursuant to Kansas' commencement statute, and its statement that Kansas law would apply to plaintiff's claims when it transferred the case to this court. Accordingly, this factor favors application of Kansas law.

### 2. Maintenance of Interstate Order

"This factor is primarily concerned with whether the application of Minnesota law would manifest disrespect for [the forum state's] sovereignty or vice versa or impede the interstate movement of people and goods." *Id*. at 746 (citing *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W. 2d 438, 455 (Minn. App. 2001). "Courts examine the contacts between the forum state and the case to determine whether to apply the forum state's law." *Id*. (citing *Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W. 2d 467, 471 (Minn. 1994). In this case, none of the parties are located in Minnesota, and defendants' presence in Minnesota is minimal. All of the events surrounding plaintiff's claims occurred in Kansas. This factor favors application of Kansas law.

### 3. Simplification of the Judicial Task

Plaintiff contends that, because the case originated in Minnesota, it would be simpler for this court to apply general common law tort principles rather than apply the KPLA. The court disagrees. The accident leading to plaintiff's injury occurred in Kansas. Plaintiff is a Kansas resident and was working for a Kansas company at the time the accident occurred. The only nexus to Minnesota is that plaintiff filed his claims there. The Minnesota District Court clearly indicated that it thought Kansas law should apply to plaintiff's claims. It would be simpler and more logical for this court, which sits in Kansas, to apply the KPLA and

Kansas substantive law to plaintiff's claims rather than reaching out to apply Minnesota substantive law, with which this court has little familiarity. This factor favors application of Kansas law.

### 4. Advancement of the Forum's Interest

"This factor examines 'which choice of law most advances a significant interest of the forum.'" *Id*. (quoting *Nodak*, 604 N.W. 2d at 95). "Minnesota courts have a recognized interest in seeing that all tort victims are fully compensated. This interest is not limited to residents." *Id*. (internal citation omitted). Plaintiff contends that, because Georgia-Pacific is a resident of Minnesota and not Kansas, Minnesota law should be applied because Minnesota has expressed an intent to regulate corporations in its forum through application of jurisdictional rules. Plaintiff contends that Minnesota's intent is that Minnesota's rules concerning products liability apply in all cases filed in Minnesota. Plaintiff cites no case law in support of his position. Plaintiff also contends that his choice of venue by filing the lawsuit in Minnesota should influence the court's determination toward application of Minnesota law. However, the Minnesota District Court clearly stated that Minnesota did not have any interest to protect or serve in the case and found, in fact, that Kansas has an obvious interest in protecting the rights of its citizenry and resolving local controversies in its own courts. Plaintiff is a resident of Kansas and was injured in Kansas. Thus, Kansas has a significant interest in plaintiff's claims. This factor favors application of Kansas law.

### 5. Better Rule of Law

"This factor should be addressed when the other factors are not conclusive as to which state's law should be applied." *Danielson v. Nat'l Supply Co.*, 670 N.W. 2d 1, 8 (Minn. App. 2003) (citing *Medtronic*, 630 N.W. 2d at 456-57). Because the other factors so strongly favor application of Kansas law, the court declines to address this factor.

Accordingly, having examined Minnesota's choice of law factors, the court finds that Kansas substantive law should be applied to plaintiff's claims before this court. The court next turns to Georgia-Pacific's summary judgment arguments.

### B.  Application of Kansas Law to Plaintiff's Claims Against Georgia-Pacific

Plaintiff contends that, regardless of which state's substantive laws apply, genuine issues of material fact exist regarding: (1) whether the product is defective; (2) whether Georgia-Pacific acted unreasonably; and (3) whether the product was unmerchantable or fit for the ordinary purpose for which it was intended. Plaintiff cited only Minnesota case law to support his opposition to Georgia-Pacific's summary judgment arguments under the KPLA. Plaintiff specifically failed to address Georgia-Pacific's specific arguments regarding its liability under § 60-3306 of the KPLA.

#### 1.  Standard

A product liability claim may be brought under the KPLA for "harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product." Kan. Stat. Ann. § 60-3302(c). Harm under the KPLA includes damage to property and personal injuries. *Id*. § 60-3302(d). The KPLA applies to all product liability claims, regardless of the theory of recovery. *Savina v. Sterling Drug, Inc.*, 795 P. 2d 915, 931 (Kan. 1990). "Therefore, under K.S.A. § 60-3302(c), the provisions of

the Act apply to actions based on strict liability in tort, as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct." *Id*. Thus, plaintiff's claims against Georgia-Pacific are all product liability claims as defined by the KPLA.

### 2.    Section 60-3306

Georgia-Pacific contends that it was a distributor of the product and that it falls under the definition of "product seller" pursuant to § 60-3302(a) of the KPLA. The KPLA defines a "product seller" as any entity that is in the business of selling products whether for use or consumption, or for resale. Kan. Stat. Ann. § 60-3302(a). Georgia-Pacific, as a distributor of the product to various retailers for re-sale, is a "product seller" within the meaning of the KPLA.

Under the KPLA, a product seller is not liable for a product liability claim, such as those asserted by the plaintiff, if the product seller establishes five facts:

  (a)   The seller had no knowledge of the defect.

  (b)   The seller could not have discovered the defect in the exercise of reasonable care in performing its duties.

  (c)   The seller was not a manufacturer of the product or product component.

  (d)   The manufacturer of the product is subject to service of process under Kansas law.

  (e)   A potential judgment against the manufacturer is reasonably certain of being satisfied.

*See id.* § 60-3306.

With regard to the first factor, there is no evidence in the record that Georgia-Pacific had knowledge of the alleged defect. In fact, all of the instructions, marketing, and other paperwork included with the product were provided solely by Willamette. Georgia-Pacific asserts, and plaintiff asserts no facts to the

contrary, that it had no knowledge of any of the defects that plaintiff has alleged. While plaintiff argues that a genuine issue of material fact exists with regard to whether the product was defective, plaintiff provides no evidence that Georgia-Pacific was aware of any alleged defect at the time it sold the product. *See McHenry ex rel. McHenry v. Sears, Roebuck & Co.*, 2000 WL 1472742, at *4 (D. Kan. Aug. 3, 2000) (holding that the determination of whether a seller of a product had knowledge of an alleged defect is not based on knowledge by the seller at the time of the alleged incident, but rather on knowledge at the time of the sale). The court finds that Georgia-Pacific has established the first factor.

With regard to the second factor, it is uncontroverted that Georgia-Pacific merely bought the product from Willamette and sold it directly to the buyer. Georgia-Pacific had no part in the manufacturing or development of the product. Georgia-Pacific required Willamette to submit quality control reports before it would distribute the product, to insure that the product met the quality standards required by the customer. Georgia-Pacific points out that the product met the quality standards for the purpose for which it was designed, which is a manufactured wood floor joist. Georgia-Pacific further points out that the only way to determine the density, elasticity, or other qualities of the product as they would compare to sawn lumber, would be to run comparison tests on the product. It is undisputed that Georgia-Pacific did not conduct any type of testing of the products that were manufactured by Willamette, and there is no evidence in the record that running tests on the product was encompassed within Georgia-Pacific's duties as a distributor of the product. Accordingly, the court finds that the defect plaintiff has alleged is not something Georgia-Pacific could have discovered through reasonable care in performing its duties as a distributor.

The third, fourth, and fifth factors are undisputed. It is uncontroverted that Georgia-Pacific was a distributor and not a manufacturer of the product. Willamette, the manufacturer of the product, was subject

to service of process under Kansas law and is a defendant in this case. Further, it is uncontroverted that Willamette has ample insurance coverage to satisfy the majority of a potential judgment, if plaintiff were to be awarded all of his claimed damages. Thus, the court finds that any potential judgment is reasonably certain of being satisfied.

Because Georgia-Pacific has established all five of the factors under § 60-3306, the court finds that Georgia-Pacific is entitled to immunity from plaintiff's product liability claims.[2]

**IT IS THEREFORE ORDERED** that defendant Georgia-Pacific Corporation's Second Motion for Summary Judgment (Doc. 123) is granted. Accordingly, plaintiff's claims against Georgia-Pacific Corporation are dismissed.

Dated this 8th day of March 2006, at Kansas City, Kansas.

                        **s/ Carlos Murguia**
                        **CARLOS MURGUIA**
                        **United States District Judge**

---

[2] Because the court finds that Georgia-Pacific is immune to plaintiff's claims under § 60-3306 of the KPLA, the court does not reach Georgia-Pacific's other summary judgment arguments.